GRASSELLI DYESTUFF CORPORATION *vs.* JOHN CAMPBELL
AND COMPANY. .

THE FIRST NATIONAL BANK OF BOSTON & others, trustees,
*vs.* SAME.

GRASSELLI DYESTUFF CORPORATION *vs.* THE FIRST NATIONAL
BANK OF BOSTON & others, trustees.

Suffolk.    December 9, 1926. — April 5, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Negligence,* Of one owning or controlling real estate. *Landlord and Tenant,*
Existence of relation, Termination of relation. *License. Evidence,*
Relevancy and materiality.

A corporation was a subtenant of the second and third floors of a building
under a lessee of the whole building, the lessee supplying the corpora-
tion with heat from a heater on the first floor. Upon the vacating of the
premises by the lessee at the termination of his lease, the corporation
sought to arrange with the owner to remain in the building until it
could find another place and asked permission to use the heater, and
the owner wrote to the corporation giving such permission and stating,
"It is understood and agreed that you will heat yourselves at no expense
to the owners . . . . You have our permission to enter the first floor
so that you can run the heater."    The corporation thereafter gave the
owner a month's notice in writing of its intention to vacate, and va-
cated the premises within the month without having given the owner
notice of its intention so to do, or, after so doing, that it had done so.
Before the expiration of the month, the heater froze and broke, and
water damaged a tenant of an adjoining building.    *Held,* that
    (1) The corporation was not a tenant of the heater or of any part of
the first floor where it was situated, but merely had a license to use
the heater;
    (2) Evidence that paper and shavings belonging to the corporation
were found near the heater, in the absence of evidence as to who put
them there, would not warrant a finding that the corporation used the
heater;
    (3) The corporation was not required to remain in possession of the
second and third floors of the building until the expiration of the month
of its tenancy, nor to notify the owner that it would vacate before the
end of the month;
    (4) No action of tort for damage resulting from negligence could be
maintained against the corporation either by the occupant of the
adjoining real estate or by the owner.

A person in control of a building is required to exercise reasonable care to keep it in such condition that others will not be injured in their persons or property; if the control and duty of keeping the premises in repair remain with the owner, he is responsible for damages caused by a failure to use such care.

The occupant of the adjoining real estate also brought an action of tort against the owner in the circumstances above described. There was evidence that, with the exception of the second and third floors, after the lessee had vacated, the entire building and the heater were in the possession of the owner; that before the pipes burst one of the windows in the rear of the first floor was broken; that cold air from this window entering the ash pit of the heater, which faced the rear, and passing through the door created a draft up the chimney, thereby causing the water to freeze and break the jacket of the heater; that water flowing therefrom into the basement of the adjoining building damaged the plaintiff's goods; that the temperature for some days before the freezing of the water and the bursting of the heater had been such that it might reasonably have been anticipated that cold air would come into the basement from the broken window and cause the water to freeze. *Held*, that it was a question of fact for the jury to determine whether there was negligence on the part of the owner in failing to use proper precautions to prevent the freezing of the water and the damage resulting.

THREE ACTIONS OF TORT, described in the opinion. Writs in the Municipal Court of the City of Boston dated April 29, 1925.

On removal to the Superior Court, the actions were tried together before *Hammond*, J. Material evidence is stated in the opinion. At the close of the evidence, motions by John Campbell and Company for verdicts in its favor were allowed. In the third action, the defendants asked for the following rulings:

"1. That on all the evidence the plaintiff is not entitled to recover against the defendants, The First National Bank of Boston, Samuel H. Hudson and Thomas W. Proctor.

"2. That there is no evidence that the damage to the plaintiff was caused by any negligence on the part of the defendants The First National Bank of Boston, Samuel H. Hudson and Thomas W. Proctor.

"3. That if the jury find that John Campbell & Company was the sole tenant in the building at 33 India Street from October to at least the middle of December, 1924, and had notified the defendants' agent on or about November 29, 1924, that it was 'vacating the premises on the 31st of De-

cember, 1924,' and that the defendants had left the water turned on in said building for the sole use and benefit of said John Campbell & Company, and that said John Campbell & Company left the premises about December 20, 1924, without notifying the defendants and without the defendants' knowledge and without causing the water to be turned off, the defendants, The First National Bank of Boston, Samuel H. Hudson and Thomas W. Proctor are not liable to the plaintiff and are entitled to a verdict."

"6. That a landlord is not liable for damages caused by the freezing and bursting of pipes on the premises where the water was left on for the sole use of the only tenant and the break occurred during the period of the tenancy of such tenant."

"9. That the permission to use the heating apparatus was a right under the tenancy.

"10. That the heater and water pipes connected therewith were a part of the leased premises.

"11. That during December, 1924, John Campbell & Company was in control of the heater."

The rulings were refused. There was a verdict for the plaintiff in the third action in the sum of $944.73. The defendants alleged exceptions in the third action, and the plaintiffs alleged exceptions in the first and second actions.

*T. W. Proctor,* (*G. S. Fuller* with him,) for The First National Bank of Boston and others, trustees.

*R. W. Wiswall,* for Grasselli Dyestuff Corporation.

*C. H. Cronin,* for John Campbell and Company.

CROSBY, J. These are three actions of tort to recover damages resulting from the freezing of water and the bursting of a hot water heater in a building. The trustees named in the second and third suits were the owners of adjoining buildings, numbered 32 and 33 India Street, in Boston. The Grasselli Dyestuff Corporation (hereinafter referred to as the Grasselli Company) was a sublessee of certain parts of the building at 32 India Street including the basement.

, John Campbell and Company (hereinafter referred to as the Campbell Company) before October 1, 1924, was a sub-tenant of the second and third floors of the building at

33 India Street, and was supplied with heat by the Kessel Company, the lessee of the whole building.  The heater was located on the first floor and was connected with pipes and radiators on the first and second floors.  The lease of Kessel Company expired at the end of September, 1924, and it then vacated the premises.  About that time the manager of the Campbell Company arranged with a representative of the owners for the company to remain in the building until it could find another place, and asked for permission to use the heater; thereupon, on September 30, a representative of the owners wrote the Campbell Company that it could continue in occupation until a tenant was obtained for the entire building, and "It is understood and agreed that you will heat yourselves at no expense to the owners . . . .  You have our permission to enter the first floor so that you can run the heater."  The Campbell Company continued to occupy the second and third floors as a tenant at will, and paid the rent each month in advance.

On October 23, by direction of the owners, the water was shut off and drained from all the pipes except those from the heating system and water supply pipes running to the second floor.  On November 29, the Campbell Company wrote to the owners' agent enclosing a check for the rent for the following month and stating: "Please take notice that we are vacating the premises at 33 India Street on the 31st of December, 1924."  Between December 17 and 20, the Campbell Company moved from the building, leaving no one in it after the latter date.  There was no evidence that it notified the owners of its intention to vacate the premises before December 31, or that it had so vacated.  They had no knowledge that it had actually moved out on December 20. On the morning of December 26 it was discovered that water was escaping from a break in the jacket of the heater, caused by the freezing of water in the pipes; that such freezing rendered the stop cock connecting the heater with the city water supply defective.  The result was, that water ran through the heater and into the basement of 32 India Street, damaging the goods stored there by the Grasselli Company. The actions brought by that company against the owners and

against the Campbell Company are for the recovery of the damages so sustained. The action brought by the owners of the building against the Campbell Company is for the recovery of damages sustained by them because of the alleged negligence of the defendant in failing to maintain a fire in the heater and thereby keep the water from freezing.

The only parts of the building rented to the Campbell Company were the second and third floors. The heater was no part of the premises so rented. The permission given to run the heater was merely a license to use it which, so far as appears from the evidence, never was exercised by the Campbell Company. No rent was to be paid for such use. The most that can be said is that a mere license to use the heater was given which was revocable at the will of the owners. The Campbell Company had neither the legal nor the constructive possession of the heater which would have enabled it to maintain an action against either the owners or a stranger. Such permission did not establish the relation of landlord and tenant. *Hamblett* v. *Bennett,* 6 Allen, 140, 145. *White* v. *Maynard,* 111 Mass. 250, 255. *Central Mills Co.* v. *Hart,* 124 Mass. 123. *Roberts* v. *Lynn Ice Co.* 187 Mass. 402, 406. *Sellers* v. *Frank,* 213 Mass. 298, 301. *Burke* v. *Willard,* 243 Mass. 547.

The Campbell Company offered evidence to show that it did not use the heater for any purpose from October 1 to December 31, 1924. If this evidence were disbelieved, still, as the judge in substance ruled, there was no evidence to warrant a finding that the heater had been so used. This is true even if waste papers with the name of the Campbell Company upon them, and chips and shavings, were found on the first floor near the heater after the basement was flooded. There was no evidence to show why or by whom they were placed there. The fact that the Campbell Company vacated the premises before December 31 without notifying the owners that it would do so was not evidence of negligence on its part. The effect of the notice given was to terminate the tenancy on December 31. The tenant was not required to remain in possession until that date, but could move out at any time prior thereto without notice to

the landlord.   No legal duty was violated by failure of the tenant to notify the owners that it would vacate before December 31.   With the exception of the second and third floors the owners were in possession of the whole building, including the heater, during the entire term of the tenancy. The presiding judge, upon the evidence, rightly directed a verdict for the Campbell Company in the cases against it.

Upon the question whether there was evidence warranting a finding that the owners were liable for the damages sustained by the Grasselli Company, it appears that after October 1, 1924, with the exception of the second and third floors, the entire building and the heater were in the possession of the owners.   There was evidence from which it could have been found that before the pipes burst one of the windows in the rear of the first floor was broken; that cold air from this window entering the ash pit of the heater, which faced the rear, and passing through the door created a draft up the chimney, thereby causing the water to freeze and break the jacket of the heater; that water flowing therefrom into the basement of the adjoining building damaged the plaintiff's goods; that the temperature for some days before the freezing of the water and the bursting of the heater had been such that it might reasonably have been anticipated that cold air would come into the basement from the broken window and cause the water to freeze.   Upon this evidence it was a question of fact for the jury to determine whether there was negligence on the part of the owners in failing to use proper precautions to prevent the freezing of the water and the damage resulting.

It is settled that a person in control of a building is required to exercise reasonable care to keep it in such condition that others will not be injured in their persons or property.   *Cunningham* v. *Cambridge Savings Bank*, 138 Mass. 480.   Where a part of a building is occupied by a tenant having control of it, he is, as to the public, under the duty of keeping such part in repair; and if a defect exists therein, the tenant and not the owner is liable for damages to third persons arising from the defect.   If the control and duty of keeping the premises in repair remain with the owner, he is responsible for such

defect. *Cunningham* v. *Cambridge Savings Bank, supra.*
*Szathmary* v. *Adams,* 166 Mass. 145.   *Conahan* v. *Fisher,* 233
Mass. 234, 237.

As we have said, in considering the other cases, the Camp-
bell Company was not a lessee of the heater but as to it was
merely a licensee; and although, permitted by the owners to
use it, it remained in the owners' possession and control.
*R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41, 46.

The case of the Grasselli Company against the owners
was rightly submitted to the jury.   In that case the de-
fendants' exceptions to the charge and to the refusal to give
their requests numbered 1, 2, 3, 6, 9, 10 and 11, for the
reasons heretofore stated must be overruled.

It follows that in each case the entry must be

*Exceptions overruled.*