JEREMIAH J. SULLIVAN, administrator, *vs.* MT. WASHINGTON CO-OPERATIVE BANK.

Suffolk.   February 27, 1939. — April 11, 1939.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Landlord and Tenant,* Portion of premises in possession and control of landlord, Landlord's liability to tenant or his family or his invitee. *Negligence,* One owning or controlling real estate. *Proximate Cause.*

Evidence, that the owner of a tenement house permitted windows of a vacant tenement to remain broken and missing for several months before cold weather which caused water pipes therein to freeze and burst and flood premises of a tenant below, warranted a finding of negligence on his part rendering him liable for conscious suffering and death of the tenant proximately resulting therefrom.

Medical testimony that death resulted from illness caused by cold and continued dampness of a tenement due to negligence of the landlord warranted a finding that such negligence was the proximate cause of the death.

TORT.   Writ in the Superior Court dated July 17, 1934. The case was tried before *M. Morton*, J., and in this court was submitted on briefs.

*W. H. Taylor & D. A. Foley*, for the plaintiff.

*J. F. Cavanagh*, for the defendant.

Cox, J.   The plaintiff's exception is to the allowance of the defendant's motion for a directed verdict.   The bill of exceptions states that the declaration was in two counts; the first, to recover for personal injuries sustained by the intestate, Mary Croke, and the second, to recover for her death.

The jury could have found that the intestate was a tenant at will of the defendant on December 15, 1933, occupying a tenement on the first floor of the premises owned by the defendant and located at 17 City Point Court, South Boston.   The tenement above the intestate's had been vacant since Labor Day, 1933, and its windows were broken, "out and missing" from September to December 15.   The temperature for several days prior to the fifteenth had been considerably below freezing and as low as eight degrees on that day.   But there was a sudden thaw on the fifteenth and, as a result, the water pipes in the upper tenement burst, the water coming down through the ceiling into the intestate's tenement.   The water was all over the floor which was "flooded," and it was "going out the back door."   When the water was shut off in the upper tenement it ceased coming through the ceiling. While the intestate was in the act of bailing out the water, she slipped on the wet floor and broke her wrist.   She had a chill and the day after the accident was coughing.   A next door neighbor, who used to see or visit the intestate about every day, testified that she did not notice any "cold or cough" or anything wrong with the intestate when she last saw her prior to her injuries.   During the two or three days after her accident "the house wasn't even dry; it was awfully damp."   A cold developed and she was taken to the city hospital on January 17, 1934, where she died on February 22, 1934.   There was testimony from a physician that the chill and dampness of the tenement would

be an adequate cause for the intestate's cold and continuing disability; that her condition, as disclosed by the hospital record which was in evidence, was causally related to the chill and "the getting cold . . . both to the illness and the death," and that the getting chilled and the constant cold and disability were an adequate cause for the disability as well as for the death. The defendant's agent went to the premises about once each week for the purpose of collecting rents. The defendant has not argued that the.intestate was guilty of contributory negligence.

Upon this evidence it was a question of fact for the jury to determine whether there was negligence on the part of the defendant in failing to use proper precautions to prevent the bursting of the pipes and the resulting damage. *Grasselli Dyestuff Corp.* v. *John Campbell & Co.* 259 Mass. 103. *Gilroy* v. *Badger,* 301 Mass. 494.

If the jury found that the defendant was negligent in this respect, it was a question of fact for it to determine whether this negligence was the proximate cause of the intestate's injuries, illness and death. *Ogden* v. *Aspinwall,* 220 Mass. 100, 103. *DeFilippo's Case,* 284 Mass. 531, 533, 534, and cases cited. *Binns* v. *Blake,* 289 Mass. 70. *Wallace* v. *Ludwig,* 292 Mass. 251, and cases cited.

*Exceptions sustained.*